UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

ARMOND LEWIS                              CIVIL ACTION NO. 14-cv-3125

VERSUS                                    JUDGE WALTER

RYAN KIMBALL                              MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Armond Lewis ("Plaintiff") is a self-represented prisoner who is housed at the David

Wade Correctional Center.  He alleged in his complaint that Captain Ryan Kimball punched

him in the face several times and later administered a chemical agent to Plaintiff's face

without justification.  Kimball responded with a Motion for Summary Judgment (Doc. 21)

that is supported by affidavits and other evidence.  For the reasons that follow, it is

recommended that Kimball's motion be granted.  It is also recommended that all claims

against unserved defendant Major Mays be dismissed without prejudice.

**Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. Pro. 56(a).  A fact is "material" if it might affect the outcome of the suit under

governing law.  Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986).  A dispute

is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for

either party.  Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute of material fact.  Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

**Relevant Facts**

**A.  The Complaint**

Plaintiff alleged in his complaint that he was admitted to the North Infirmary on the morning of June 4, 2014 for back pain related to sickle cell disease.  He alleged that he was asleep at 10:00 p.m. that night when Captain Kimball kicked his bed, told everyone else to leave the ward, and then charged Plaintiff and punched him several times in the face, all while Plaintiff was connected to IV fluids and suffering from back pain.  Plaintiff wrote in an unsworn grievance that the blows caused his lip and left side of his face to swell, and an orderly cleaned up his blood at the scene before other officers arrived.

Plaintiff alleged that Major Mays then came to assist and told Plaintiff that he was being placed in administrative segregation.  The nurse removed Plaintiff from his medical equipment, and he was given a change of clothes and placed in handcuffs behind his back. Plaintiff alleged that Mays was escorting him to lockdown when Kimball administered

chemical agent directly in Plaintiff's face with no warning and while Plaintiff was in compliance and under restraint. Plaintiff alleged that he could not see but had to continue walking and fell down. He alleged that he eventually made it to the N-3 lobby, where he was forced to wait on his knees 15 to 20 minutes for a nurse to arrive. It was then 20 minutes more before he could get a shower. The allegations in the complaint were not verified or otherwise made under oath, so  they are not competent summary judgment evidence.

### B. Kimball's Evidence

Kimball responded to the complaint with affidavits, medical records, and other documentation surrounding the event. Melissa Benson testified in an affidavit that she is a registered nurse who began working at the prison in 2011. Plaintiff was her patient in the North Infirmary ward, after being admitted the morning of June 4, 2014 with a diagnosis of sickle cell pain. His orders were for bed rest, monitoring, and IV fluids. Benson testified that she performed a routine vital sign check at 6:35 p.m. and noted that Plaintiff's blood pressure was significantly increased from the time of his admission. She saw that his IV saline fluids were running out too fast, and the extra fluid and salt had caused an increase in blood pressure. Benson testified that she hung another liter of normal saline and adjusted the dial-a-log control device to reduce the flow. Plaintiff verbally complained of pain with no relief from medications, but Benson noted that he had no appearance of pain and constantly talked to and laughed with other prisoners when he did not know he was being observed.

Nurse Benson testified that at 7:45 p.m. she caught Plaintiff turning up his dial-a-log to increase the flow of IV fluids. She confronted him, but he denied turning up the device.

Benson turned off the fluids and, at about 10:00 p.m., she gave Plaintiff Ultram for his complaints of pain.  After only 10 minutes, Plaintiff became irate and yelled at Benson, used derogatory terms and demanded stronger narcotics.  Benson asked Sgt. Deandre Ford to contact Captain Kimball to intervene with Plaintiff.

Sgt. Ford testified in an affidavit that Kimball was contacted as requested, and Plaintiff was irate and unruly.  Nurse Benson testified that she explained to Kimball what had happened, and she went with Kimball into the ward to speak with Plaintiff.  Kimball testified that Benson said it was her belief that Plaintiff was attempting to intentionally "blow out" his veins so that he would have to be taken to a hospital. When Kimball entered the ward with Sgt. Ford, Plaintiff immediately kicked off his covers, sat up in bed, and yelled that Nurse Benson was a "stupid bitch" who didn't know what she was talking about.  Kimball testified that he warned Plaintiff against using derogatory terms in violation of prison rules, but Plaintiff continued to rant and use foul and derogatory language toward Benson, Ford, and Kimball.  When Kimball told Plaintiff that he would be written up for his behavior, Plaintiff responded with curses, a demand to have the matter handled by a black captain, and a threat that he had "people in the world" who would come looking for Kimball.

Kimball testified that he obtained appropriate supervisor and medical permissions to discharge Plaintiff from the North Infirmary and transfer him to the South Compound administrative segregation.  Plaintiff was restrained with a single pair of handcuffs behind his back, and Kimball and Major Tyrone Mays began to escort Plaintiff to his new housing area.  Kimball testified that at no time during his interactions with Plaintiff was he alone with

Plaintiff in the North Infirmary, and he "never struck him in his face or kicked his bed, as alleged."  Sgt. Ford corroborated this with testimony that at no time was Kimball ever alone with Plaintiff or seen to kick Plaintiff's bed or strike Plaintiff in the face.  Nurse Benson also testified, "At no time did I see Capt. Kimball kick Offender Lewis' bed or strike him."

Kimball testified that Plaintiff became extremely unruly and argumentative as he was escorted through the prison.  Plaintiff cursed and flailed his shoulders and head about in an attempt to strike Kimball and Mays.  Kimball gave Plaintiff several direct orders to stop, but Plaintiff did not comply.  Major Mays corroborated this testimony in his affidavit.

Kimball testified that he considered his options to be taking Plaintiff down to the ground, which could result in injury due to Plaintiff being handcuffed behind his back, or to use a chemical agent.  He decided to use a one-second burst of chemical agent to Plaintiff's face, after which Plaintiff "immediately bec[a]me calm and compliant."  Major Mays offered similar testimony and said Plaintiff "became more tranquil and started complying with orders" after the chemical agent took effect.

Captain Kimball testified that his contact with Plaintiff ended when they reached the gate to the South Compound.  Major Mays was then joined by another officer, to continue escorting Plaintiff, and Kimball returned to the North Compound.  Mays testified that when he arrived with Plaintiff on the South Compound, a nurse was called from the infirmary to wash out Plaintiff's eyes and examine him, and Plaintiff was given a shower and new clothes.

Dr. Jeffrey Fuller is a medical physician who examined Plaintiff for a sickle cell follow-up on June 6, 2014, just two days after this incident.  Dr. Fuller testified in an

affidavit that Plaintiff stated he was having trouble with arthralgia/myalgia and pain in his back and knees.  Dr. Fuller testified that Plaintiff "made no complaints of a swollen lip or facial swelling and none were observed by me."  Fuller added that had he seen evidence or symptoms of a swollen lip or facial swelling he would have documented that in the notes of his physical examination.

**Excessive Force**

A convicted inmate's claim of excessive force is governed by the Eighth Amendment. The inmate must establish that the force was not applied in a good faith effort to maintain or restore discipline but was inflicted "maliciously and sadistically to cause harm." Hudson v. McMillian, 112 S.Ct. 995 (1992).  This standard applies with equal force to claims that prison officials used a chemical agent on an inmate.  Baldwin v. Stalder, 137 F.3d 836, 840-41 (5th Cir. 1998); Davis v. Cannon, 91 Fed. Appx.  327 (5th Cir. 2004).

The Baldwin decision observed that each chemical agent case is judged on its own facts, but there are several non-exclusive factors that should be considered in assessing whether unnecessary and wanton infliction of pain was used in violation of a prisoner's Eighth Amendment right to be free from cruel and unusual punishment. The listed factors were: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response.  Baldwin, 137 F.3d at 839.

Kimball met his summary judgment burden by presenting affidavits and other competent evidence that presented facts that do not allow a finding of an Eighth Amendment violation.  Under Kimball's facts, there was a need to restore order, Plaintiff did not comply with oral commands, Kimball chose the less physical of his force options, and order was restored after a fairly minimal use of force in the form of a one-second burst of chemical agent.

That shifted the burden to Plaintiff to demonstrate the existence of a genuine dispute of a material fact.  Plaintiff filed a response (Doc. 23) to the motion for summary judgment. Plaintiff took issue with the version of the facts asserted by Kimball and the other witnesses, and he insisted that the facts were as alleged in his complaint.  But Plaintiff did not support his factual assertions with any competent summary judgment evidence.

A mere allegation in a complaint is not sufficient evidence to establish the existence of a dispute as to a genuine issue of material fact for summary judgment purposes.   "To withstand a properly supported motion for summary judgment, the nonmoving party must come forward with evidence to support the essential elements of its claim on which it bears the burden of proof at trial."  National Ass'n of Gov. Employees v. City Public Service Bd., 40 F.3d 698, 712 (5th Cir. 1994), citing Celotex, 106 S.Ct. at 2552.  When faced with a defendant's properly supported motion for summary judgment, the plaintiff may not rest on his allegations to get to trial.  He must present significant probative evidence tending to support the complaint.  National Ass'n, 40 F.3d at 713, citing  Anderson, 106 S.Ct. at 2510.

Plaintiff did not meet his summary judgment burden. His mere unsworn memorandum

Page 7 of  10

is not competent summary judgment evidence.  Larry v. White, 929 F.2d 206, 211 n. 12 (5th Cir. 1991).  The evidence presented by Kimball is uncontested and presents facts that do not depict any use of force maliciously and sadistically to cause harm.  Rather, they indicate that there was no punch to the face, and the use of chemical agent was only after Plaintiff was engaging in disruptive and violent behavior and refused to obey orders to stop.  Considering the circumstances, the application of chemical agent was not an Eighth Amendment violation.  Captain Kimball was not responsible for Plaintiff's medical care, and he handed Plaintiff off to others after the chemical agent was applied, so Kimball is not responsible for any claims related to those matters.  Kimball is entitled to summary judgment dismissing all claims against him.

**Major Mays**

Plaintiff's complaint listed a single defendant, Ryan Kimball, in the caption, and Plaintiff did not list any additional defendants in part III of the form complaint that asked for the names of any defendants.  He did mention in the text of his complaint a "Major Mays," and the Clerk of Court appears to have listed Mays on the docket sheet as a defendant, perhaps out of an abundance of caution.

The court issued an order (Doc. 13) that allowed for service of the complaint and instructed Plaintiff to submit completed service papers for each defendant.  Plaintiff submitted papers for both Kimball and a "Major Mays."  The Marshal attempted to serve the papers through the DOC legal affairs office, but they refused to accept service without a first

name to verify that Mays was a current employee for whom they were authorized to accept service.  Doc. 15.

The court issued an order that described this history and allowed Plaintiff 14 days to submit completed service papers for Mays, complete with his or her first name.  Plaintiff was provided the necessary forms, and he was even advised that he could conduct discovery if necessary to learn Mays' first name.  Plaintiff's deadline passed in July 2016, and he has not submitted any service papers for Mays.

The court is obligated to appoint the Marshal to make service in prisoner pauper cases, but it is the prisoner's responsibility to comply with the minimal requirements of providing proper paperwork and service information, including the defendant's name.  Plaintiff has had ample opportunity to provide the necessary paperwork if he wished to serve Mays, but he has not done so.  Given Plaintiff's apparent lack of interest in pursuing any claim against Mays, it is recommended that the claims against Mays be dismissed for failure to prosecute.  Mays and Kimball are the only two possible defendants, so acceptance of this recommendation will result in the resolution of all claims in this case.

Accordingly,

**IT IS RECOMMENDED** that (1) Ryan Kimball's **Motion for Summary Judgment (Doc. 21)** be **granted** and that all claims against Kimball be **dismissed with prejudice**, and (2) all claims against Major Mays be **dismissed without prejudice** for failure to prosecute.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 22nd day of September, 2016.

Mark L. Hornsby
U.S. Magistrate Judge